

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2005

# Yang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4003

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Yang v. Atty Gen USA" (2005). *2005 Decisions.* Paper 283.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4003
_____

FENG LIN YANG,

Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Agency No. A71 824 203)
_____

Submitted Under Third Circuit LAR 34.1(a)
October 27, 2005

Before:  SLOVITER, FISHER and GREENBERG, *Circuit Judges*.

(Filed: November 1, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Feng Lin Yang ("Yang"), a native and citizen of China, petitions this Court for review of a final order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying Yang's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] We have jurisdiction under 8 U.S.C. § 1252 and will deny the petition.

## I.

As we write for the parties, we will set forth only those facts necessary for our analysis. Yang entered the United States in 1992, when the United States Coast Guard rescued him and other aliens from a sinking boat off the coast of California. An officer of the Immigration and Naturalization Service ("INS")[2] interviewed Yang through an interpreter. Yang told the officer that he had been smuggled out of China and wished to enter the United States "to earn some money . . . to support his family," who had remained in China. He did not mention a fear of persecution and stated that he was not "wanted" in China "by the police or any other government agency."

---

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, December 10, 1984, 1465 U.N.T.S. 85.

[2]On March 1, 2003, the INS ceased to exist, and its interior enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement, within the Department of Homeland Security. *See* Homeland Security Act, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192 (2002). For purposes of this opinion, the agency will be referred to as the INS.

Exclusion proceedings were commenced against Yang soon thereafter. In 1993, Yang filed an application for asylum, claiming for the first time that he had fled China "to avoid the Chinese government persecution based upon its coercive family planning policy." Yang testified at a hearing that he had been threatened with fines and sterilization in 1983, after his wife had given birth to twins, and that his family had been forced to leave their village permanently in 1984 to avoid the authorities. The application was initially denied by an immigration judge, who found Yang not to be credible, but the BIA later terminated the exclusion proceedings to allow for reconsideration of the case in light of the agency's recently adopted position recognizing resistance to coercive family planning policies as grounds for a claim of persecution.[3]

Removal proceedings were re-instituted in 2001, after an asylum officer who had reviewed the case concluded again that Yang was not credible. At a subsequent immigration hearing, Yang testified that the Chinese government's policy of fining couples with more than one child had not been enforced in his village prior to 1991. Yet, he also claimed that he and his wife had fled their village in 1984 to avoid enforcement of the policy. Yang stated that after 1984 he had been able to secure a series of jobs around the country and that his wife had given birth to a third child in 1986, while they were in a government dormitory. Neither he nor his wife has been sterilized and, although the

---

[3]Congress later amended the Immigration and Naturalization Act to codify this position. *See* 8 U.S.C. § 1101(a)(42)(B).

Chinese government has assessed monetary fines against Yang, he indicated that he has never paid the fines. His wife and children remain in China.

The IJ denied the requests for asylum, withholding of removal, and protection under the CAT. The IJ noted the discrepancy between Yang's initial statements to the INS officer that he had come to the United States to earn money and his later allegations of persecution based on the one-child policy. The IJ also identified the contradiction between Yang's testimony that the policy had not been enforced in his village until 1991 and his assertion that he was forced to leave the village in 1984 to avoid enforcement of the policy. The IJ found, based on these inconsistencies and others,[4] that Yang was not credible and had not established past persecution or a well-founded fear of future persecution.

The BIA summarily affirmed the decision of the IJ.[5] This timely petition for review followed.

---

[4]For example, Yang stated that his family had fled their home in the village in 1984 and never returned; yet, residence cards submitted by Yang from 1988 and 1990 list this home as the family's current residence.

[5]To the extent that Yang challenges the authority of the BIA to affirm an immigration decision without opinion, we have previously rejected this argument. *See Dia v. Ashcroft*, 353 F.3d 228, 234-35 (3d Cir. 2003).

II.

Where the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *Partyka v. Attorney General*, 417 F.3d 408, 411 (3d Cir. 2005). Factual findings of the IJ, including whether the alien has experienced "persecution" or has a "well-founded fear of persecution," must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001). Adverse credibility determinations are also reviewed for substantial evidence. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). To support an adverse credibility finding, discrepancies in an alien's testimony must go to the "heart of the asylum claim." *Id.*

The adverse credibility determination in this case is supported by the administrative record. Upon entering the United States, Yang indicated that he had left China in an effort to earn money to support his family;[6] yet, he later alleged that he had left the country based on fear of persecution. He testified that the policy of fining couples with more than one child had not been enforced in his village until 1991; yet, he claimed that he and his family had been threatened with fines and forced to flee the village in

---

[6]Yang confirmed in testimony before the IJ that he had understood the INS interpreter during his initial interview. *Cf. Balasubramanrim v. INS*, 143 F.3d 157, 163-64 (3d Cir. 1998) (noting that discrepancies between answers to initial interview questions and later testimony could not support adverse credibility determination when alien could not understand interpreter at initial interview).

1984. He asserted that he and his family were under threat of sterilization and punishment by Chinese officials; yet, he stated that his wife had given birth to a third child while in a government dormitory and conceded that neither he nor his wife, who has lived in China for the last eleven years, has been sterilized, forced to pay fines assessed against them, or otherwise punished by the Chinese authorities.

Yang offers no reasonable explanation for these contradictions but merely characterizes them as "minor and unimportant." (Br. of Pet'r 6.) They are not. They relate directly to Yang's reasons for entering the United States and the manner in which Chinese officials enforced the one-child policy against him and his family. These contradictions go "to the heart" of his claim of persecution. *See Gao*, 299 F.3d at 272. The IJ appropriately relied upon them to find that Yang was not credible and that he had not established either past persecution or a well-founded fear of future persecution. *See Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003).

### III.

The finding that Yang has not established past or future persecution is supported by substantial evidence. This finding defeats the claims for asylum, withholding of removal, and protection under the CAT. *See Shardar v. Ashcroft*, 382 F.3d 318, 324 (3d Cir. 2004); *Xie v. Ashcroft*, 359 F.3d 239, 241-42 (3d Cir. 2004); *Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2003).

Accordingly, the petition for review will be denied.